IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01248-CYC

ERIC LEBRON SPRINGS,

     Applicant,

v.

UNITED STATES PENITENTIARY FLORENCE AD/MAX WARDEN,

     Respondent.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

**Cyrus Y. Chung, United States Magistrate Judge.**

Applicant Eric Lebron Springs contends that certain prison disciplinary proceedings lacked due process. He therefore asks, via an application for a writ of habeas corpus, to restore certain good-time credits lost as a result of the hearing. But the record reflects that he received the process due for such a hearing and, accordingly, the Court DENIES his application.

## BACKGROUND

The applicant is a prisoner in the custody of the Federal Bureau of Prisons (BOP). He currently is incarcerated at the Florence ADX U.S. Penitentiary in Florence, Colorado. His current release date is July 12, 2105, via good conduct time release. ECF No. 46-1 (Decl. of Omar Gonzalez, Discipline Hearing Officer (DHO) at the United States Department of Justice, Federal Bureau of Prisons, USP Atwater, and attachments thereto) at 3.[1]

The prison disciplinary conviction the applicant challenges in this action stems from an

---

[1] The record page numbers cited herein refer to the Court's CM/ECF document page numbers.

incident that occurred while the applicant was a prisoner at USP Atwater, a federal prison in California. According to the April 4, 2023 BOP incident report and April 10, 2023 BOP Referral, on April 4, 2023, prison staff observed the applicant assault his cellmate with closed fists to the head and upper torso. *Id*. at 80-83. Staff gave the applicant a direct order to cease, but he did not. *Id*. Corrections Officer Neal opened the cell's food slot and ordered the applicant to submit to hand restraints. *Id.* at 80. The applicant refused. *Id*. Officer Neal sprayed one burst of pepper spray and the applicant subsequently submitted to hand restraints though the slot. *Id.* The applicant then used his right hand to grab Officer Neal's wrist and pull him through the food slot. *Id.* Another officer assisted Officer Neal in getting his hands and arms free from the food slot and the applicant's grasp. *Id*. Eventually, several corrections officers responded to the scene, removed the applicant from the cell, and applied precautionary restraints "[d]ue to his continued disruptive behavior." *Id.* at 83. Officer Neal was escorted to the hospital due to injuries to his right arm. *Id.; see also id*. at 112.

On April 4, 2023, an incident report was written charging the applicant with Assaulting with Serious Injury (Prohibited Act Code 101). *Id*. at 6, 80. The incident report was forwarded to an investigating lieutenant, and the discipline process was suspended pending referral to the FBI. *Id.* at 6, 81. On April 10, 2023, the FBI advised that it would not pursue prosecution and returned the report to the BOP for further processing. *Id.* at 6, 84.

A copy of the incident report was delivered to the applicant the next day, April 11, 2023, and the applicant was advised of his rights and given the opportunity to make a statement. *Id*. at 6, 82. The applicant did not provide a substantive statement about the incident. *See id.* The applicant also did not provide any documentary evidence to the lieutenant or request any

witnesses. *Id*. The lieutenant referred the incident report to the Unit Disciplinary Committee (UDC) for further processing. *Id.*

On April 14, 2023, the UDC conducted a hearing on the incident and referred it to the DHO for a hearing due to the severity of the charged offense. *Id.* at 7, 81. The applicant declined to make a statement in the UDC process. *Id.*

The applicant was given a Notice of Discipline Hearing on April 14, 2023. *Id.* at 7, 85-86. In response, the applicant requested that he be provided a staff representative and named two inmates as witnesses who would testify that the "incident report is false" and "misleading" and that he "did not assault the officer." *Id.* at 7, 86.

The DHO hearing was conducted on May 17, 2023. *Id.* at 7, 74. At the hearing, the DHO reviewed the applicant's notice of charges with him and the applicant was advised of his rights. *Id*. at 7, 85. The applicant confirmed that he understood his rights and that he had no documentary evidence to present. *Id.* The applicant asked his staff representative to review the video from the incident. *Id.* at 8, 74. The staff representative reviewed the video, which, according to the representative, showed that a corrections officer "ask[ed] for someone in Cell 112 to cuff up," after which the officer "cuff[ed] someone up," and his "arm [went] into the cell and then [came] back out." *Id.* at 8, 74. The staff representative also sought to obtain a statement from the applicant's cellmate (inmate Mason), but the cellmate refused to make a statement. *Id.* at 74. The applicant decided that he no longer wanted the second inmate (inmate Garcia) as a witness. *Id.* The applicant was given an opportunity to make a statement at the hearing, and he stated that he denied the charge against him, that the officer pulled on his cuffs, and that he did not pull away from the officer or assault his cellmate. *Id.* at 77.

"After carefully considering the evidence presented," the DHO issued a six-page report finding "that [the applicant] had committed the prohibited act of Assaulting Any Person with Serious Injury (Code 101)." *Id.* at 8, 75-76. The DHO "relied on the officer's written report, an FBI referral declaration, supporting memorandums, [and] evidence photos and medical injury assessments." *Id.* at 76. The DHO imposed a sanction of 41 days loss of good conduct time; 120 days disciplinary segregation; 180 days impoundment of personal property; 180 days loss of commissary privileges; and 180 days loss of telephone and email privileges. *Id.* at 8, 78.

The applicant received a copy of the DHO's full report, including his written findings and conclusions, on June 9, 2023. *Id.* at 8, 79. The applicant appealed the decision, and the appeal was denied. *Id.* at 9.

On May 19, 2025, the applicant filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Application). ECF No. 24. He proceeds *pro se*. In the Application, he claims that he was denied due process because his staff representative was prevented from reviewing the "investigation report and all relevant material in relation to the incident report" and because he was unable to present witnesses at the DHO hearing because his cellmate, inmate Mason, refused to provide a statement "out of fear of retaliation by correctional officials." *Id.* at 9; *see also* ECF No. 47 at 9–13. As relief, the applicant requests that the Court vacate the DHO's "find[ing] of guilt" and restore the good time credits he lost because of the finding. *Id.* at 4. Alternatively, he requests that the Court grant a new hearing and give him the chance to review the "investigation report and all relevant material in relation to the incident." *Id.*

On October 23, 2025, the respondent was ordered to show cause why the Application should not be granted. ECF No. 39. The parties consented to magistrate judge jurisdiction for all

4

purposes, ECF No. 43, resulting in a reference of the case to the undersigned pursuant to 28 U.S.C. § 636, ECF No. 44. The respondent then filed a Response to Order to Show Cause, ECF No. 46, and the applicant filed a reply. ECF No. 47.

### LEGAL STANDARDS

The Court must construe the Application and other papers filed by the applicant liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief is warranted only if the applicant "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

In the context of prison disciplinary proceedings, "[i]t is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (internal quotation marks omitted); *see also Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (citing *Mitchell* in the context of a federal prisoner challenging a prison disciplinary conviction). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The only

procedural process due to a prisoner in connection with a disciplinary proceeding are: (1) written notice of the charges against the prisoner prior to the disciplinary hearing, (2) an opportunity to call witnesses and present documentary evidence, and (3) a written statement of reasoning by the fact finder. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). If these procedures are met, then due process in the prison disciplinary context demands only that there be "some evidence" to support the hearing officer's decision, *id. at* 455, and that the decision-maker must be impartial, *see Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004) (citing *Wolff*, 418 U.S. at 592 (Marshall, J., concurring)). Ascertaining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-46. The decision may be upheld even if the evidence supporting the decision is "meager." *Id.* at 457.

## DISCUSSION

With respect to the required procedural due process, there is no dispute in this case that the applicant received written notice of the charges against him prior to the disciplinary hearing and a written statement of reasoning by the fact finder after the hearing. *See id.* at 454. Thus, the only question is whether the applicant had an opportunity to call witnesses and present documentary evidence. *Id.*

The applicant claims that he did not have an opportunity to call witnesses because the one witness he wished to call, his cellmate inmate Mason, refused to make a statement because, according to the applicant, the witness feared retaliation from prison officials if he testified.

6

However, a witness's refusal to testify in prison disciplinary proceedings is not the equivalent of a DHO's refusal to allow a witness to testify. *See Saleh v. Davis,* No. 09-CV-02607-PAB-KLM, 2010 WL 5676524, at \*4 (D. Colo. Nov. 4, 2010), *report and recommendation adopted*, No. 09-CV-02607-PAB-KLM, 2011 WL 334321 (D. Colo. Jan. 31, 2011). "Nothing in the law compels witness testimony in these circumstances, or invalidates proceedings conducted without it." *Id.* Absent evidence that prison officials took some action to prevent a witness's testimony, a witness's particular motivation for refusing to testify has no bearing on this conclusion. Thus, here, inmate Mason's refusal to make a statement in the DHO proceedings did not violate the applicant's right to an opportunity to call witnesses.

The applicant also claims that his due process rights were violated because, he alleges, his staff representative requested to review the "investigation report and all relevant material in relation to the incident report," but the request was denied, ECF No. 24 at 9, and the representative was "allowed only to review the video of part of the incident that occurred on April 14, 2023," ECF No. 47 at 13. The applicant does not identify who allegedly denied the representative's request or provide further detail or evidence concerning the request. Moreover, even taking the applicant's allegations as true, the applicant has not identified any specific witnesses or documentary evidence he was prevented from presenting as a result. It is undisputed that applicant received the Incident Report, that he was advised of his due process rights at the hearing, that he stated he was prepared to proceed at the hearing, that he told the DHO he had no documentary evidence to present, and that he requested only one witness, who refused to make a statement. He has failed to show that he was denied the opportunity to call witnesses and present documentary evidence at the DHO hearing.

Finally, the DHO's findings are supported by "some evidence" in the record, *see Hill*, 472 U.S. at 455, including the April 4, 2023 BOP incident report, the April 10, 2023 BOP Referral, and the medical injury assessment of Officer Neal. The applicant does not assert, and the Court does not find, any bias on the part of the DHO. *See Gwinn*, 354 F.3d at 1219. Thus, the applicant's due process rights were not violated in the disciplinary proceedings.

**IV. CONCLUSION**

For the reasons discussed in this order, the applicant is not entitled to relief and the Application will be denied. Accordingly, it is

**ORDERED** that the Application for A Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 24) is DENIED and this case is DISMISSED.

DATED July 10, 2026.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge

8